IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY BARROS,

      Plaintiff,

vs.                                                                             No. CIV 04-865 MV/RHS

CITY OF ALBUQUERQUE,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed June 24, 2005, **[Doc. No. 31]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

**BACKGROUND**

Defendant City of Albuquerque ("the City"), through its Department of Family and Community Services ("the Department"), operates a Housing Rehabilitation Program whereby the City receives federal grants to provide low-interest loans to eligible homeowners to rehabilitate their homes. Pursuant to the program, the City hires contractors to rehabilitate eligible homes in Albuquerque. The Housing Rehabilitation Program primarily is staffed with loan officers, who qualify low income homeowners and properties for housing rehabilitation in accordance with federal housing regulations, and construction inspectors, who oversee and inspect the work of the contractors hired to perform the rehabilitation work. The Housing Rehabilitation Program is managed by the Private Housing Manager. The Housing Rehabilitation Inspection Supervisor assists the Private Housing Manager in managing the rehabilitation projects.

Plaintiff, a 51-year-old male, has been employed by the City since 1985--briefly as a carpenter, for approximately ten years as a Housing Rehabilitation Inspector, and for the last ten years as the Housing Rehabilitation Inspection Supervisor. In addition to his construction-related experience and training, Plaintiff has significant knowledge of the entire Housing Rehabilitation Program, having helped rewrite the program's policies and procedures and having been the Acting Housing Rehabilitation Loan Supervisor for approximately fourteen months. During his tenure in the Department, Plaintiff opposed certain policy changes and reported allegedly illegal activities that took place in the Department.

In 1997, Yvonne Chavez, a 37-year-old female, was hired by the City as a Senior Loan Officer in the Housing Rehabilitation Program. The duties of the Senior Loan Officer are primarily "to lead . . . the more complex and difficult work of staff responsible for qualifying low income homeowners and property for housing rehabilitation assistance." Prior to being hired as a Senior Loan Officer, Ms. Chavez had worked for ten years as a loan officer for a credit union where her duties included analyzing and approving loan applications, as well as working in the Real Estate Department. Ms. Chavez did not have any experience in construction management.

As a result of a reclassification study, the job title for the manager of the Housing Rehabilitation Program was changed to "Building Maintenance Specialist." In 2003, the position of Building Maintenance Specialist became available when the current manager, Ted Trujillo, transferred to a different position within the Department. In a memo dated April 2, 2003, Mr. Trujillo stated that he was transferring to a different position effective April 7, 2003, but that he would continue to manage the overall operations of the Housing Rehabilitation Program and

that he had designated Ms. Chavez as the acting supervisor to oversee the day-to-day operations of the Housing Rehabilitation Program.

In April 2003, the City advertised the Housing Rehabilitation Program manager vacancy under its new job title of "Building Maintenance Specialist." The job announcement described the duties as:

> To direct and supervise the activities and operations of staff engaged in assisting clients to obtain Community Development housing rehabilitation services; to implement program policies and procedures in compliance with the Uniform Housing Code; to analyze the loan and construction proposals; and, to provide complex and administrative support to the Housing Division Manager.

According to the job announcement, the minimum education and experience required for the job were a bachelor's degree and five years of experience in Federal Housing Program Management that included at least two years of direct supervisory experience in a management and/or administrative capacity. The job announcement further provided that related education and experience were interchangeable on a year for year basis.

Nine individuals applied for the position, including Plaintiff. Ms. Chavez did not apply. Michael Passi, the Department Associate Director, reviewed the applications and determined that many of the applicants primarily had experience in supervising janitorial and minor maintenance functions and did not have the qualifications necessary to perform the job duties required for the position. In fact, only five of the applicants, including Plaintiff, were found to be qualified for the position. Following additional review, the Department concluded that the job title did not accurately reflect the duties of the manager of the Housing Rehabilitation Program and, as a consequence, the job advertisement had not attracted applicants with the requisite skills.

The Department, in conjunction with the Human Resources Department, determined that the title "Housing Rehabilitation Loan Supervisor" more accurately characterized the Housing Rehabilitation Program manager position. The vacancy was readvertised with the title "Housing Rehabilitation Loan Supervisor" in June 2003. In addition to changing the job title, the minimum education and experience requirement was revised to state that knowledge of U.S. Department of Housing and Urban development regulations was preferred.

Twenty-five individuals, including Plaintiff and Ms. Chavez, applied for the position. Seven applicants, including Plaintiff and Ms. Chavez, were interviewed for the position on June 25, 2003. The hiring team members were department director Valorie Vigil (female, age 47), associate director Michael Passi (male, age 61), fiscal manager Lori Grimm (female, age 34) and program specialist Sylvia Fettes (female, age 56). The interview questions focused on the fiscal management aspects of the Housing Rehabilitation Program, ostensibly because Ms. Vigil was concerned about the importance of these issues.

Three months later the hiring team selected Ms. Chavez for the position based on her knowledge of financial management issues related to the program.[1] The hiring team did not feel that Plaintiff, who had extensive experience with the construction aspects of the position, demonstrated adequate knowledge of, and experience in, financial management issues related to the program. Ms. Chavez announced her selection for the position on October 3, 2003.

Plaintiff filed claims of discrimination based on sex and age with the EEOC and, after receiving right to sue letters on these charges, timely filed a complaint alleging violation of the

---

[1] There is no explanation in the record regarding why the hiring team took three months to select a candidate.

Age Discrimination in Employment Act ("ADEA")(Count IV), gender discrimination (Count III), breach of contract (Count I), and breach of the implied covenant of good faith and fair dealing (Count II). Defendant filed the instant motion seeking summary judgment on all claims.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file,

designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

I.   Title VII Reverse Gender Discrimination Claim

Plaintiff, who is male, asserts that he was discriminated against on the basis of his gender when he was not selected for the Housing Rehabilitation Loan Supervisor position. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a three-part paradigm for evaluating Title VII disparate treatment claims based on indirect evidence. First, the plaintiff must establish a *prima facie* case of discrimination. Second, if the plaintiff carries his initial burden, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged workplace decision. Third, if the defendant carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination. *Id*. at 802.

A.   *Prima Facie* Case

To demonstrate a *prima facie* case of disparate treatment involving a failure to promote, a plaintiff must prove that: (i) plaintiff belongs to a protected class; (ii) plaintiff applied for an

available position; (iii) despite being qualified, the plaintiff was rejected; and (iv) after plaintiff's rejection, the position remained open or was filled.[2] *McDonnell Douglas*, 411 U.S. at 802. While not addressed by either party, Plaintiff, as a male, is a member of an historically favored class and thus his Title VII gender discrimination claim is one for reverse discrimination. In a reverse discrimination claim the *prima facie* case requirements are modified because a member of an historically favored class does not necessarily deserve the presumption of discrimination afforded to a member of an historically disfavored class. *Notari v. Denver Water Dep't*, 971 F.2d 585, 588-89 (10th Cir. 1992). Thus, to justify applying to a majority plaintiff the same presumption of discrimination afforded to a minority plaintiff, a majority plaintiff must establish background circumstances that support an inference that the employer is one of those "unusual

---

[2] Tenth Circuit case law is inconsistent on whether the fourth prong of the *prima facie* case requires a plaintiff to show that the person hired or promoted was outside of the protected class to which the plaintiff belongs or simply that the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. *See, e.g., Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000); *Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999). The Tenth Circuit recently acknowledged this inconsistency but did not resolve it. *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1307 n.1 (10th Cir. 2005) ("We note that our cases have sometimes articulated the *prima facie* case differently, particularly as to the fourth prong and whether it requires the plaintiff to show that the person promoted was outside of the protected class to which the plaintiff belongs. Because we do not resolve this case on the basis of the adequacy of Ms. Jaramillo's *prima facie* case . . .we do not address any inconsistency in our jurisprudence."). Notably, while the Tenth Circuit did not directly resolve the inconsistency in *Jaramillo*, it did articulate the fourth prong of the *prima facie* case as requiring a plaintiff only to show that after the plaintiff was rejected, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *Id*. In any case, the discrepancy is not material in this case because, as discussed below, Plaintiff cannot rely on the *McDonnell Douglas* formulation to establish his *prima facie* case.

employers who discriminates against the majority." *Id.* at 589; *see also Shapolia*, 992 F.2d at 1038 & n.6.

Plaintiff has not argued, much less provided any evidence, that the City is one of the unusual employers who discriminates against the majority and, therefore, may not rely upon the *McDonnell Douglas* formulation to state his *prima facie* case.[3]

Plaintiff's failure to demonstrate entitlement to the *McDonnell Douglas* presumption, however, does not foreclose his opportunity to prove that he was a victim of intentional discrimination. *Notari,* 971 F.2d at 589. The Tenth Circuit, recognizing that just because a reverse discrimination claimant cannot show the background circumstances necessary to trigger the *McDonnell Douglas* presumption does not inexorably mean that his employer has not intentionally discriminated against him, has established an alternative basis upon which a plaintiff may satisfy his *prima facie* burden. *Id*. at 590. Under this alternative basis, a plaintiff who presents direct evidence of discrimination (*e.g.*, oral or written statements on the part of a defendant showing a discriminatory motivation), or indirect (*e.g.*, circumstantial) evidence sufficient to support a reasonable probability that but for the plaintiff's status the challenged employment decision would have favored the plaintiff, states a *prima facie* case of intentional discrimination under Title VII. *Id*. A plaintiff who attempts to state a *prima facie* case in this fashion, however, is not entitled to rely on the presumption that is implicit in the *McDonnell*

---

[3] While Plaintiff does not allege that the City is one of the unusual employers who discriminates against the majority, in support of his discrimination claim, Plaintiff does provide deposition testimony from another Housing Rehabilitation Program employee, Mr. Rodarte, who states that he believes that there are more women than men in certain sections of the Department. This unsupported statement, standing alone, is insufficient to demonstrate that the City is one of those unusual employers who discriminates against the majority.

*Douglas prima facie* case analysis. *Id*. ("In other words, it is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision. Instead, the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.").

        i. First Job Announcement

Plaintiff asserts that the fact that he was not interviewed or hired for the Housing Rehabilitation Program manager position advertised in the first job vacancy announcement even though he was qualified supports his claim of gender discrimination. These facts would be sufficient to state a *prima facie* case under the *McDonnell Douglas* formulation. However, as discussed above, Plaintiff is not entitled to rely upon the presumptions in the *McDonnell Douglas* formulation and must come forward with evidence to support specific facts that are sufficient to support a reasonable inference that but for Plaintiff's gender, he would have been hired for the position. Plaintiff has come forward with no evidence that he was not hired for this position due to his gender. The City has come forward with evidence that it changed the job title, added an additional preferred qualification, and re-advertised the position to attract more applicants with the requisite skills. Plaintiff contends, without support, that the City's position is illogical because adding another qualification to the job description would not attract more applicants. The evidence in the record, however, refutes Plaintiff's position. Only nine people applied after the first advertisement while twenty-five people applied after the second advertisement. Based on the

evidence presented, the fact that the City changed the title of the position and re-advertised the position to attract more applicants does not support Plaintiff's gender discrimination claim.

### ii. Second Job Announcement

The crux of Plaintiff's discrimination argument is that Ms. Chavez, a woman, was treated preferentially through the entire hiring process and that this preferential treatment supports a reasonable inference that Plaintiff was denied the position due to his sex. In support of this argument, Plaintiff asserts that the job description was rewritten in favor of Ms. Chavez's qualifications; that the questions asked during the interview were skewed to meet the qualifications of Ms. Chavez; that Ms. Chavez was given the interview questions prior to the interview; and that Ms. Chavez was groomed for the job by Mr. Trujillo. Many of these contentions are unsupported, irrelevant and/or unpersuasive.[4] Even accepting, however,

---

[4] For example, the qualification that Plaintiff asserts was added to the job to tailor the position to Ms. Chavez's qualifications was simply that knowledge of U.S. Department of Housing and Urban development regulations was preferred. There is no evidence that this qualification favored Ms. Chavez. Furthermore, it is well settled that employers, not employees or courts, are entitled to define the core qualifications for a position, so long as the criteria utilized by the company are of a nondiscriminatory nature. *Garrison v. Gambro, Inc*., 428 F.3d 933, 938 (10th Cir. 2005) (citing *Gorence v. Eagle Food Centers, Inc*., 242 F.3d 759, 765 (7th Cir. 2001) ("[w]hat the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with"). The disputed qualification is not discriminatory and the Court "will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." *Lucas v. Dover Corp*., 857 F.2d 1397, 1403-04 (10th Cir. 1988).

Similarly, the assertion that Mr. Trujillo trained Ms. Chavez for the position prior to his departure and named her acting supervisor when he departed does not support a claim of favoritism by the hiring team, which did not include Mr. Trujillo.

Plaintiff's contention that Ms. Chavez was provided the interview questions in advance is based on deposition testimony in which Ms. Chavez, after initially agreeing that she received the interview questions, immediately and unequivocally corrected her answer and denied receiving the questions:

Q. And you were given a set of questions that you were going to be asked at the time of

Plaintiff's contention that Ms. Chavez was pre-selected or favored for the position and the entire hiring process was skewed in her favor, this is not a violation of Title VII.

Title VII prohibits only intentional discrimination based upon an employee's protected class characteristics. *See E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1321 (10th Cir. 1992) (motivation for employer's decision may have been favoritism, revenge, or random or erroneous conduct or judgment, none of which is prohibited under Title VII); *Kennedy v. Landon*, 598 F.2d 337, 341 (4th Cir. 1979) (concluding that even though preselection may have violated the rules and regulations of the state it does not evidence the type of discrimination prohibited by Title VII); *Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986) ("[p]reselection . . . does not violate Title VII when such preselection is based on the qualifications of the party and not on some basis prohibited by Title VII."); *Johnson v. Nordstrom,* 260 F.3d 727, 734 (7th Cir. 2001) (simple favoritism cannot be the basis of a discrimination complaint under Title VII); *Housley v. Boeing Co.,* 177 F.Supp.2d 1209, 1217 (D. Kan. 2001) ("[f]avoritism based on criteria other than gender or age . . .does not violate the federal anti-discrimination laws and does not raise an inference of discrimination."). In order to make a Title VII claim, Plaintiff must come forward with evidence that gender was the basis for the alleged preferential treatment. This, Plaintiff has not done.

---

the interview? "Yes"?
 A. Yes. Uh-huh.
 Q. And prior to the interview—
 A. You know what? I never seen a list of questions, not even at the interview. But I know they were going to ask me questions.
 Q. Well, you just said you saw a list of questions.
 A. No. I did not see a list. I know that they were going to ask me a list.

Chaves Deposition at 38-39.

-11-

Plaintiff alleges that Ms. Chavez was pre-selected for the position because Ms. Vigil and the hiring committee wanted to hire a female. Plaintiff, however, has provided no support for this assertion. In his deposition testimony, Plaintiff identifies a number of reasons that he believes he was not selected by the hiring committee, none of them gender related:

> Q. Now, with regards to Mr. Passi, do you have any knowledge or information or evidence that he discriminated against you because you're a man?
>
> A. No, other than he didn't--I don't think he wanted me in that job.
>
> Q. And that's because of what you already told me about how you spoke up against some issues concerning the program, right?
>
> A. That's correct, yes.

Barros Deposition at 38-39.

> Q. Is there anything else you can tell me about why you think they wanted to hire a female in particular?
>
> * * *
>
> A. All right. I think the job description was changed to match Ms. Chavez. And I also think that Valorie Vigil did not want me in that position. So I think that I was being retaliated against by Ms. Vigil, possibly some other people in the department.

Barros Deposition at 31-33.

> Q. Now, with regards to Ms. Fettes or Ms. Grimm, do you have any kind of knowledge, information, or evidence that they didn't select you for the position because you were a man?
>
> A. No.

Barros Deposition at 47. Plaintiff did speculate, however, that Ms. Grimm was trying to secure the director's position on a permanent basis and that "might have swayed her to vote possibly against me" and that Ms. Fettes may have voted against him in order to remain in good standing

-12-

with Ms. Vigil. *Id*. at 47 & 50. Even if supported, these assertions would not support an inference of discrimination based on gender.

In fact, Plaintiff believes he was rejected for the position for non-gender-related reasons:

Q. Okay. So your belief is that because you spoke up regarding changes to the Rehab Housing program that one of the results was that you didn't get the job of [sic] Housing Rehabilitation loan supervisor?

A. Correct.

Barros Deposition at p. 36.

Plaintiff's pre-selection argument proves too much. If Defendant did in fact resolve to promote Ms. Chavez, and altered the qualifications and interview process to favor Ms. Chavez, in order to keep Plaintiff from getting the position due to Plaintiff's opposition to changes in the program, this only shows that the application process was a meaningless exercise. This might be inconsiderate or unfair, but it does not support the inference that the City's employment decision was motivated by gender-based discrimination. *See Mackey v. Shalala*, 360 F.3d 463, 468-69 (4th Cir. 2004) (holding that the plaintiff's allegation of preselection, even if true, did not entitle a jury to conclude that its proffered explanation--that the candidate was better qualified--was a pretext for unlawful discrimination). As articulated by Plaintiff, his pre-selection argument rests on the premise that Defendant promoted Ms. Chavez for a reason not prohibited by Title VII. Assuming that this premise is true, a reasonable jury could not find that Defendant's decision was based on gender discrimination. *See Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 328 (10th Cir. 1996) ("[I]f a civil rights plaintiff concedes that the real reason for the employer's action was a motive not prohibited under the civil rights laws, such a concession mandates granting of summary judgment to the employer.") (citing *Randle v. City of Aurora,* 69 F.3d 441, 451 n. 14 (10th Cir. 1995)).

Plaintiff also cites to deposition testimony from Patrick Rodarte, another Housing Rehabilitation Program employee, who opines that there are more women than men in the housing division and that he believes that the City has hired more women than men because the four or five times he applied for jobs during his five years in the Housing Division, the jobs were ultimately filled by a woman:

> Q. . . . Do you have any information which would support [Plaintiff's] claim that he didn't get the job because he was a man?
>
> A. And what I could say on that is - -in my own regard, is that I have noticed that the City has hired more women than men as far as--you know, when I've applied for jobs.

Rodarte Deposition at 14-15.

> Q. Are you aware of how many females are assigned to the Housing Division?
>
> A. Not in total, no.
>
> Q. Okay. Do you know what the percentages of male versus female employees?
>
> A. I don't know the percentage, but I know there's more women than men.

Rodarte Deposition at 98.

These assertions are insufficient to raise an inference of discrimination. First, while "statistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class," that statistical data must "focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). Here, Mr. Rodarte presents no evidence of the qualifications of the women candidates who were selected over him or the criteria used to fill

-14-

these other positions. Furthermore, there is no evidence that the persons involved in the hiring decisions referenced by Mr. Rodarte were involved in the hiring decision at issue in this case. *See Heno v. Sprint/United Management Co.*, 208 F.3d 847, 856 (10th Cir. 2000) ("anecdotal evidence of discrimination should only be admitted if the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand"). Similarly, the fact that the Housing Division may have more female than male employees, without more, does not suggest that Plaintiff was discriminated against based on his gender.

Absent any nexus between Mr. Rodarte's anecdotal evidence of prior acts of gender discrimination and the employment action at issue in this case, Mr. Rodarte's anecdotal comments do not support an inference of discrimination.

Plaintiff also contends that Ms. Chavez has not been running the program well since she became the rehabilitation manager. Whether Ms. Chavez is a good manager is irrelevant to the question of whether her selection for the position violated Title VII. An employer's exercise of erroneous or even illogical business judgment does not constitute discrimination. *See Flasher*, 986 F.2d at 1319 ("Title VII does not make ... irrational employment [decisions] illegal.").

Finally, Plaintiff contends that he was more qualified for the job and therefore the fact that a woman was hired must mean that he was discriminated against on the basis of his gender:

> A. My contention is Yvonne Chavez was hired for this particular job because she was female.
>
> Q. Why do you think that?
>
> A. Because I feel I had more experience regarding this whole program.

Barros Deposition at 28-29.

The employment office determined that both Plaintiff and Ms. Chavez met the minimum qualifications for the job.[5]  Plaintiff and Ms. Chavez had different strengths and weaknesses, with Ms. Chavez having more knowledge of the financial aspects of the job and Plaintiff having more knowledge of the construction aspects of the job.  When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, "it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria." *Colon-Sanchez v. Marsh*, 733 F.2d 78, 82 & n. 1 (10th Cir. 1984); *Mackenzie v. Denver,* 414 F.3d 1266, 1278 (10th Cir. 2005) ("Unless the disparity in employees' qualifications are obvious, 'we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question.'") (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)).  The court's role is prevent unlawful hiring practices not to "act as a super personnel department that second guesses employers' business judgments." *Simms v. Oklahoma*, 165 F.3d 1321, 1330 (10th Cir. 1999)(quotation omitted).  Furthermore, Title VII does not require an employer to hire or promote the most qualified applicant; it only requires that the employer make such decisions without regard to race, sex, religion, color, or national origin.  *McCarthney v. Griffin-Spalding County Bd. of Educ.*, 791 F.2d 1549, 1552 (11th Cir. 1986).

---

[5]  Plaintiff, relying upon Ms. Chavez's resume, contends that she did not meet the minimum qualifications for the job, which required five years of experience in Federal Housing Program Management and a bachelor's degree.  While Ms. Chavez's resume reveals that she did not have a bachelor's degree, the lack of a bachelor's degree is not dispositive because the job announcement provides that education and experience may be interchangeable on a year for year basis.  Defendant has submitted an affidavit from Mary Scott, Human Resources Department Administrator for the City of Albuquerque, stating that Ms. Chavez met the minimum qualifications for the position based on her nine years of related experience and her two years of supervisory experience.

The evidence is insufficient to support a reasonable probability that the City rejected Plaintiff, or hired Ms. Chavez, based on gender. Thus Plaintiff has failed to establish a *prima facie* case under the Tenth Circuit's alternative formulation and summary judgment will be granted in favor of Defendant on Plaintiff's sex discrimination claim.

B. Retaliation

Plaintiff appears to be alleging that in retaliation for complaining about certain practices within the Housing Rehabilitation Program, he was not hired for the manager position. Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff provides no evidence that the practices that he opposed in the Department were practices made unlawful by Title VII. Furthermore, Plaintiff has provided no evidence that he exhausted any retaliation claims. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002) (each discrete incident of retaliatory treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted); *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (Title VII plaintiff must "exhaust administrative remedies for each individual discriminatory or retaliatory act."). Because there is no evidence in the record that Plaintiff opposed any acts made illegal by Title VII or filed an EEOC charge detailing the retaliatory acts purportedly committed by the City, Plaintiff's retaliation claim must be dismissed.

C. Age Discrimination Claim

Invoking the three-step burden-shifting analysis mandated by *McDonnell Douglas*, a plaintiff alleging a failure-to-promote claim under the ADEA must initially establish a *prima facie* case demonstrating: (1) he was a member of a protected class; (2) he applied for and was qualified for the position; (3) despite being qualified he was rejected; and (4) after he was rejected, the position was filled by someone outside the protected class. *Kendrick,* 220 F.3d at 1226.  Upon establishment of a *prima facie* case, the burden shifts to the defendant, who must provide evidence "that the adverse employment actions were taken for a nondiscriminatory reason." *Greene v. Safeway Stores*, 98 F.3d 554, 558 (10th Cir. 1996).  If the defendant can meet this burden, the plaintiff must then show "that the [defendant's] proffered reason was not the true reason for the employment decision." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff, who is 51-years old, is a member of a protected age class; Plaintiff applied for and was qualified for the Rehabilitation Loan Supervisor position; despite being qualified he was rejected; and, after he was rejected, the position was filled by a younger woman.  These facts are sufficient to establish a *prima facie* case and the burden now shifts to the City to rebut Plaintiff's *prima facie* case.

The City has come forward with evidence that Ms. Chavez was selected for the position based on her knowledge of the financial aspects of the job.  The City has satisfied its burden to establish a non-discriminatory reason for the challenged employment action and the burden shifts back to Plaintiff to demonstrate that the City's reason is pretextual.

Other than the fact that the person chosen for the job is younger than he, Plaintiff has come forward with no evidence that the reason he was not selected is because of his age.  In fact,

-18-

Plaintiff's deposition testimony reveals that it he believes it was his opposition to changes the City wanted to make in how the Housing Rehabilitation Program was run rather than his age that affected the hiring decision:

> Q. . . .Do you believe that your age was a motivating factor in you not getting the job?
>
> A.  I think that age was a part of it regarding the fact that I've been there a long time.  I'm pretty much set in the ways of the program.  I know the program, and I tried to follow the rules of the program and regs and standards, et cetera.  And I think that they needed someone else, and it happened to be that Yvonne Chavez was younger, so they could train her to do--to be more open and possibly run the program the way that they wanted to run it and at all costs keep me out of that program, keep me out of that position.

Barros Deposition at 53.

> Q.  . . . What information do you have to lead you to believe that the hiring committee wanted to hire Yvonne because she was younger?  How about that?
>
> A.  What information do I have?  I think it just boils down to them not wanting me in that position.

Barros Deposition at 49.

Plaintiff has failed to come forward with evidence demonstrating that the legitimate reasons the City offered for hiring Ms. Chavez were merely a pretext for discrimination and summary judgment will be granted in favor of the City on Plaintiff's ADEA claim.

### D.  State Law Claims

Plaintiff's remaining claims are state common law claims alleging breach of express and implied contracts of employment.  Under 28 U.S.C. § 1367, this Court has discretion to dismiss claims supported only by supplemental jurisdiction after the dismissal of all claims over which it had original jurisdiction.  The Tenth Circuit has stated that a district court has discretion to try state claims in the absence of any triable federal claims.  *See Thatcher Enterprises v. Cache*

*County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).  That discretion, however, is to be exercised only "in those cases in which given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id*.  Moreover, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id*.

The Court finds no compelling reason to exercise supplemental jurisdiction over Plaintiff's state law claims and, accordingly, will dismiss them without prejudice.

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, filed June 24, 2005, **[Doc. No. 31],** is **GRANTED**.  Judgment will be entered in favor of Defendant on Plaintiff's gender and age discrimination claims (Count III and Count IV).

**IT IS FURTHER ORDERED** that Plaintiff's state law claims (Count I and Count II) are dismissed without prejudice.

Dated this 31st day of January, 2006.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff:
   Gilbert J. Vigil, Esq.

Attorney for Defendant:
   Beatrice J. Brickhouse, Esq.